GENERAL MOTORS CORPORATION v PUBLIC SERVICE
COMMISSION No 2

Docket Nos. 99752, 99753. Submitted June 7, 1988, at Lansing.
Decided September 21, 1988.

On March 13, 1978, Consumers Power Company applied to the
Public Service Commission for a gas rate increase. Psc Case No.
U-5732. General Motors Corporation and the Attorney General
opposed the increase. On July 10, 1978, the psc issued an order
granting partial and immediate rate relief, authorizing Con-
sumers to increase its rates by $19,885,000 annually and re-
quiring Consumers to file a bond to secure refunds to customers
in the event that the rate increase exceeded Consumers' reve-
nue deficiency. On June 27, 1979, the psc issued an order which
concluded that Consumers had a $29,162,000 revenue deficiency
and granted Consumers a corresponding annual rate increase.
On September 5, 1979, Consumers notified the psc that it was
mothballing its Marysville plant. The next day, the psc re-
opened the rate-making proceedings to determine the effect of
the plant closing on Consumers' rates. On September 7, 1979,
Ingham Circuit Court, James R. Giddings, J., issued an order
preventing Consumers from charging its customers for the
Marysville plant's operating and maintenance costs. On Octo-
ber 2, 1979, the psc ordered an immediate rate reduction of
$23,914,000 per year, which included the $11,244,000 rate
reduction ordered by the Ingham Circuit Court. The October 2,
1979, order adjusted the psc's June 27, 1979, order to reflect the
effect of mothballing the Marysville plant on Consumers' rates
by reducing the rate increase from $29,162,000 to $5,248,000.
On March 17, 1987, the Ingham Circuit Court, Michael G.
Harrison, J., issued an opinion and order affirming the psc's
October 2, 1979, order. General Motors Corporation and the
Attorney General filed separate appeals from the circuit court's
affirmation of the order. The appeals have been consolidated.
    The Court of Appeals held:

REFERENCES

Am Jur 2d, Appeal and Error §§ 693, 700; Public Utilities §§ 240-
243, 276-291.
Amount paid by public utility to affiliate for goods or services as
includible in utility's rate base and operating expenses in rate
proceeding. 16 ALR4th 454.

1. General Motors' claim that the lower court erred in affirming the PSC's October 2, 1979, order because the PSC issued that order without giving General Motors notice and an opportunity to be heard is without merit. The PSC may reduce rates without any notice or hearing.

2. General Motors, in its claim that the lower court erred in affirming the October 2, 1979, order because that order discriminated against industrial and commercial customers, failed to carry its burden of showing by clear and satisfactory evidence that the PSC's rate reduction was unlawful or unreasonable.

3. General Motors offered no support for its argument that the lower court erred in affirming the October 2, 1979, order because that order failed to completely eliminate the Marysville plant's costs from commercial and industrial rates. Arguments without supporting citation are considered to be abandoned on appeal.

4. General Motors' claim that the Marysville plant was not, and had not been, used and useful is rejected. Evidence indicated there would be a future need for the plant.

5. The Attorney General's contention that the PSC erred in its October 2, 1979, order by failing to make Consumers refund the money which it collected pursuant to rates set by July 10, 1978, and June 27, 1979, orders because those rates exceeded the rates established by the October 2, 1979, order is rejected. The Attorney General's argument is based on the proposition that the PSC's June 27, 1979, order was an interim order rather than a final one. The June 27, 1979, order was final. Further, no cogent reason has been shown why a change of circumstances which was announced on September 5, 1979, made rates established prior to that time excessive such that a refund would be justified.

Affirmed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — REDUCTION OF RATES — NOTICE.

The Public Service Commission may reduce rates a public utility can charge without any notice or hearing to the utility's customers (MCL 460.6a; MSA 22.13[6a]).

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATES.

The Public Service Commission is given broad discretionary power to set just and reasonable rates for privately owned public utilities and is specifically vested with authority to regulate the rates of gas utilities; all rates fixed by the PSC are deemed prima facia lawful and reasonable, and a party attacking an order of the PSC has the burden of showing by clear and

satisfactory evidence that the order complained of is unlawful or unreasonable (MCL 462.25; MSA 22.44).

3. Public Utilities — Public Service Commission — Appeal.

A court reviewing an order of the Public Service Commission is to give due deference to the commission's administrative expertise and is not to substitute its judgment for that of the commission.

4. Appeal — Supporting Citations — Abandonment of Issues.

A statement of position without supporting citation is insufficient to bring an issue before the Court of Appeals.

5. Public Utilities — Public Service Commission — Final Orders — Reopening of Cases — Interim Orders.

The reopening of a rate case by the Public Service Commission after its order in the case was final and the reduction of rates based on developments which occurred after the order became final did not make that final order an interim order in the case.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Roderick S. Coy* and *Timothy P. Collins*), for General Motors Corporation in 99752.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson,* Assistant Attorney General, for Attorney General in 99753.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Don L. Keskey, Henry J. Boynton, Elizabeth R. Schwartz,* and *James A. Ault,* Assistant Attorneys General, for Public Service Commission in 99752, 99753.

*David A. Mikelonis,* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *George W. Loomis, Michael G. Oliva,* and *Ronald W. Bloomberg*), for Consumers Power Company in 99752, 99753.

Before: Danhof, C.J., and Sawyer and D. R. Freeman,* JJ.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

PER CURIAM. Plaintiffs, General Motors Corporation and the Attorney General, appeal as of right from a March 17, 1987, order of Ingham Circuit Judge Michael G. Harrison. That order affirmed defendant Public Service Commission's October 2, 1979, order in case No. U-5732. The PSC's order reduced defendant Consumers Power Company's gas rates to reflect the closing of Consumers' synthetic natural gas plant in Marysville. We affirm.

Consumers provides natural gas service to customers in Michigan. Consumers' Marysville plant produced synthetic natural gas from feedstocks (light hydrocarbon liquids). See *Consumers Power Co v Federal Energy Administration,* 413 F Supp 1007, 1015 (ED Mich, 1976), modified 413 F Supp 1024 (ED Mich, 1976). Consumers built the plant in the early 1970s when natural gas was scarce and deliveries of it were unpredictable. The plant was controversial because the synthetic natural gas which it produced was more expensive than gas which was obtained from other sources.

On March 13, 1978, Consumers applied for a gas rate increase. On July 10, 1978, the PSC issued an order granting partial and immediate rate relief. That order authorized Consumers to increase its rates by $19,885,000 annually and required Consumers to file a bond to secure refunds to customers in the event that the rate increase exceeded Consumers' revenue deficiency.

On June 27, 1979, the PSC issued an order which concluded that Consumers had a $29,162,000 revenue deficiency and granted Consumers a corresponding annual rate increase. On September 5, 1979, Consumers notified the PSC that it was mothballing the Marysville plant. The next day, the PSC reopened the rate-making proceedings to determine the effect of the plant closing on Consumers' rates. On September 7, 1979, Ingham Circuit

Judge James R. Giddings issued an order which prevented Consumers from charging its customers for the Marysville plant's operating and maintenance costs. On October 2, 1979, the PSC ordered an immediate rate reduction of $23,914,000 per year. This amount included the $11,244,000 rate reduction ordered by Judge Giddings. The PSC's October 2, 1979, order adjusted the PSC's June 27, 1979, order to reflect the effect mothballing the Marysville plant had on Consumer's rates by reducing the rate increase from $29,162,000 to $5,248,000. On March 17, 1987, the lower court issued an opinion and order affirming the PSC's October 2, 1979, order.

General Motors' first claim is that the lower court erred in affirming the PSC's October 2, 1979, order because the PSC issued that order without giving General Motors notice and an opportunity to be heard. This claim is meritless. The PSC may reduce rates without any notice or hearing. MCL 460.6a; MSA 22.13(6a).

General Motors' second claim is that the lower court erred in affirming the PSC's October 2, 1979, order because that order discriminated against industrial and commercial customers. The order reduced rates for all customer classes. General Motors argues that only commercial and industrial customers' rates should have been reduced because they paid most of the Marysville costs.

The PSC is given broad discretionary power to set just and reasonable rates for privately owned public utilities. It is specifically vested with authority to regulate the rates of gas utilities. *Attorney General v PSC,* 118 Mich App 311, 315-316; 324 NW2d 628 (1982), lv den 417 Mich 1003 (1983). All rates fixed by the commission are deemed prima facie lawful and reasonable. MCL 462.25; MSA 22.44; *Attorney General v PSC, No 1,* 133 Mich

App 719, 725; 349 NW2d 539 (1984), lv den 422 Mich 910 (1985).

The party attacking a PSC order has the burden of showing by clear and satisfactory evidence that the order complained of is unlawful or unreasonable. MCL 462.26; MSA 22.45; *Attorney General v PSC, No 1, supra,* p 725; *The Detroit Edison Co v PSC,* 127 Mich App 499, 507; 342 NW2d 273 (1983), lv den 419 Mich 867 (1984). The standard of judicial review of a PSC decision is whether the decision is lawful and supported by competent, material, and substantial evidence on the whole record. Const 1963, art 6, § 28. *Building Owners & Managers Ass'n of Metropolitan Detroit v PSC,* 131 Mich App 504, 516; 346 NW2d 581 (1984), aff'd 424 Mich 494; 383 NW2d 72 (1986). The reviewing court is to give due deference to the PSC's administrative expertise and is not to substitute its judgment for that of the commission. *Id.,* p 517.

> "On matters involving the exercise of good common sense and judgment only, the determination of the commission must be held to be final unless such determination in its application results in the establishment by 'clear and convincing' proof of a rate so low as to be confiscatory or so high as to be oppressive. What return a public utility shall be entitled to earn upon its invested capital, and what items shall be considered as properly going to make up the sum total of that invested capital, are questions of fact for the determination of the commission, and their conclusions thereon, upon which the rate is based, are unassailable unless, as a necessary result, it can be affirmatively asserted that the resultant rate is unreasonable and unlawful.
>
> "Between the point where a rate may be said to be so low as to be confiscatory and the point where it must be said to be so high as to be oppressive upon the public, there is a 'twilight zone' within

which the judgment of the commission may operate without judicial interference. Assume that the commission, in determining the amount of the capital invested, allows as an element of the sum an amount which the court, if charged with the initial duty of determination, might find to be excessive or inadequate; or, assume that the commission, in the exercise of its best judgment, permitted a rate of return upon the invested capital higher or lower than the court, under like circumstances, might believe to be proper—nevertheless, the court would not be warranted in interfering unless the rate, as established, was clearly unreasonable and unlawful." [*Michigan Bell Telephone Co v PSC,* 332 Mich 7, 26-27; 50 NW2d 826 (1952), quoting *Detroit v Michigan Railroad Comm,* 209 Mich 395, 433-434; 177 NW 306 (1920).]

General Motors has failed to carry its burden of showing by clear and satisfactory evidence that the PSC's October 2, 1979, rate reduction was unlawful or unreasonable.

General Motors' final claim is that the lower court erred in affirming the PSC's October 2, 1979, order because that order failed to completely eliminate Marysville costs from commercial and industrial rates. General Motors offers no support for this argument. Arguments without supporting citation are considered to be abandoned on appeal. A party may not leave it to this Court to search for authority to sustain or reject its position. A statement of position without supporting citation is insufficient to bring an issue before this Court. *Tringali v Lal,* 164 Mich App 299, 306; 416 NW2d 117 (1987).

Further, we reject General Motors' claim that the Marysville plant was not, and had not been, used and useful. This claim forms the basis for General Motors' argument that the Marysville costs should have been completely eliminated from

rates. We address this claim in an appeal from another "Marysville case." The Marysville plant was used and useful in the 1970s. Evidence indicated that there would be a future need for it to produce synthetic natural gas when the "supply bubble" of natural gas available from other sources ended. See *General Motors Corp v PSC No 1,* 175 Mich App 576; — NW2d — (1988).

The Attorney General claims that the PSC erred in its October 2, 1979, order by failing to make Consumers refund the money which it collected pursuant to rates set by the July 10, 1978, and June 27, 1979, orders because those rates exceeded the rates established by the October 2, 1979, order. Retroactive rate-making is prohibited. *Michigan Bell Telephone Co v PSC,* 315 Mich 533; 24 NW2d 200 (1946); *Michigan Bell Telephone Co v PSC,* 85 Mich App 163, 165; 270 NW2d 546 (1978), lv den 405 Mich 822 (1979). The Attorney General's argument is essentially based on the proposition that the PSC's June 27, 1979, order was an interim order rather than a final order. See *Great Lakes Steel Division of National Steel Corp v PSC,* 416 Mich 166, 183; 330 NW2d 380 (1982). We reject this proposition. The June 27, 1979, order was final. After Consumers notified the PSC that it was mothballing its Marysville plant, the PSC reopened this case and reduced Consumers' rates. The reopening of this case and reduction of rates based on developments which occurred after the June 27, 1979, final order did not make that order an interim order. Further, the Attorney General has failed to present us with any cogent reason why a change of circumstances which was announced on September 5, 1979, made rates established prior to that time excessive such that a refund would be justified.

Affirmed.