CONSUMERS POWER COMPANY v PUBLIC SERVICE
COMMISSION

Docket Nos. 102369, 102370, 103051, 103088, 103097. Submitted October 2, 1989, at Lansing. Decided November 21, 1989.

In October, 1986, the Public Service Commission ordered all public utilities to file information setting forth the net effect on utility rates of the reduction of the corporate income tax rate under the Tax Reform Act of 1986. Consumers Power Company filed the requested information and claimed that its electric and gas rates should not be changed because its existing rates were at a stabilization level and any change would adversely affect its financial stabilization cash position. The PSC then initiated proceedings to consider rate changes for all investor-owned utilities and gave the utilities the opportunity to present information to show cause why their rates should not be changed. In determining the impact of the tax rate change, the PSC ordered that 1986 be used as the test year. Following evidentiary hearings at which Consumers, the PSC staff and the intervenors, the Attorney General and Association of Businesses Advocating Tariff Equity (ABATE), presented evidence, the administrative hearing officer entered proposed orders for both gas and electric rates. Following denial of Consumers' motion to reopen proofs in the electric rate case, the PSC entered final orders, reducing annual gas rates by $23,055,000 and ordering refunds of excess tax reserves for gas service for 1987 and 1988 of $10,449,000 and $7,251,000 respectively and reducing annual electric rates by $73,455,000 with $21,697,000 of that amount to be collected under bond pending a determination in another case involving the Midland Nuclear Plant and ordering refunds of excess tax reserves for electric service for 1987 and 1988 of $11,575,000 and $8,818,000 respectively. Consumers appealed from both orders. ABATE and the Attorney General appealed from that portion of the electric rate order allowing Consumers to collect $21,697,000 annually under bond

REFERENCES
Am Jur 2d, Public Utilities §§ 232, 240, 271, 273, 274.
See the Index to Annotations under Public Service Commissions; Taxes; Utilities.

pending resolution of the other case. The Attorney General appealed from the denial of his proposal for a further $2,809,000 in annual rate reductions for gas service. The appeals were consolidated for review.

The Court of Appeals *held:*

1. The PSC properly limited the proceedings to the single issue of the effect of the tax reduction on rates and refused to consider in those proceedings Consumers' financial stabilization status.

2. The PSC properly ordered the refund of excess tax reserves.

3. The selection of an appropriate test year is within the ratemaking authority of the PSC, and the Court of Appeals will not substitute its judgment in such matters for that of the PSC.

4. Consumers failed to show by clear and satisfactory evidence that the PSC's orders were unlawful or unreasonable.

5. The PSC properly permitted the collection under bond of the $21,697,000 annually which was the subject of another pending rate case relating to the financing of the Midland Nuclear Plant.

6. The Attorney General's proposal for a further reduction in the gas rate was properly denied.

Affirmed.

1. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATES.

   The Public Service Commission is given broad discretionary power to regulate public utilities; all rates fixed by the PSC are deemed prima facie lawful and reasonable; a party attacking an order of the PSC has the burden of showing by clear and satisfactory evidence that the order complained of is unlawful or unreasonable (MCL 462.25; MSA 22.44).

2. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — HEARINGS — SCOPE OF PROCEEDINGS.

   The Public Service Commission may properly limit the scope of the proceedings before it to a single issue or purpose; accordingly, it is not error for the Public Service Commission to limit the scope of its proceedings to the issue of the impact of the Tax Reform Act of 1986 on public utility rates and to refuse to consider in those proceedings the question whether any rate reduction dictated by the decreased rate of corporate taxation might have an adverse effect on the financial stabilization cash position of a particular utility.

3. PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — RATEMAKING POWER — APPEAL.

   The Public Service Commission, as part of its broad ratemaking

power, has the power to select a test year for the purpose of determining the propriety and magnitude of any rate changes; the Court of Appeals gives due deference to the Public Service Commission's administrative expertise and will not substitute its judgment for that of the Public Service Commission.

*David A. Mikelonis, James E. Brunner* and *Robert M. Neustifter,* and *Loomis, Ewert, Ederer, Parsley, Davis & Gotting* (by *George W. Loomis, Harvey J. Messing* and *Ronald W. Bloomberg*), for Consumers Power Company.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Hugh B. Anderson* and *Margaret A. Nelson,* Assistant Attorneys General, for the Attorney General.

*Hill, Lewis, Adams, Goodrich & Tait* (by *Roderick S. Coy* and *Nancy L. Lukey*), for ABATE.

*Don L. Keskey, James A. Ault* and *Elizabeth R. Schwartz,* Assistant Attorneys General, for the Public Service Commission.

Before: HOOD, P.J., and CYNAR and GRIFFIN, JJ.

PER CURIAM. Under the Tax Reform Act of 1986 (TRA), the corporate income tax rate was reduced from forty-six percent to thirty-four percent. As a result of this reduction, the Michigan Public Service Commission, in an October 28, 1986, order, required all public utilities to file information setting forth the net effect of the TRA on utility rates and requested proposals for any appropriate rate changes. Consumers Power Company filed information alleging that there should be no reduction in its gas and electric rates. Consumers claimed that its situation was unique because: (1) its existing rates were at a stabilization level; (2) the net effect of the TRA would increase its tax

burden because it was not currently paying taxes; and (3) any rate reductions would adversely affect its financial stabilization cash position.

On December 17, 1986, the PSC issued an order initiating proceedings for all Michigan investor-owned communication, electric and gas utilities to consider changes in their rates as a result of the TRA. The utilities were given an opportunity to present additional information showing cause why their rates should not be reduced. The methodology for presenting the information was to estimate the impact of the TRA by using 1986 as the test year.

Consumers had one case for its gas rates (U-8680) and one for its electric rates (U-8681). Pre-hearing conferences and examination of witnesses in both cases were conducted before a PSC hearing officer. Evidence was presented by Consumers, the PSC Staff, and intervenors in the action, the Attorney General and the Association of Businesses Advocating Tariff Equity (ABATE). On June 9, 1987, the hearing officer issued his proposed decision. Exceptions to the decision were submitted and Consumers' motion to reopen proofs in the electric case was subsequently denied. On August 4, 1987, the PSC entered final orders in the cases providing for:

1. Annual gas rate reductions for gas service of $23,055,000 to be effective on or after August 5, 1987.

2. Refunds of excess tax reserves for gas services of $10,449,000 in 1987 and $7,251,000 in 1988.

3. Annual electric rate reductions of $73,455,000 for service on or after August 5, 1987. $21,697,000 to be collected under bond pending resolution of another case addressing rate making treatment of Consumers' investment in Midland Nuclear Plant.

.

The remaining $51,758,000 to be implemented immediately.

4. Refund of excess tax reserves for electric services of $11,575,000 in 1987 and $8,818,000 in 1988.

Consumers filed in this Court motions for temporary stay, immediate consideration and a preliminary injunction. A panel of this Court denied temporary stay and immediate consideration, but remanded the motion for a preliminary injunction to the Ingham Circuit Court. In an opinion dated September 10, 1987, the circuit court denied Consumers' motion for a preliminary injunction.

Consumers appeals as of right from the August 4, 1987, orders (Appeal Nos. 102369 and 102370). Intervening parties ABATE and the Attorney General appeal as of right that portion of the PSC orders authorizing Consumers to collect $21,697,000 under bond (Appeal Nos. 103051 and 103088). Finally, the Attorney General appeals as of right from the PSC's rejection of his proposal for further rate reductions in gas service of $2,809,000 (Appeal No. 103097). All five appeals were consolidated.

I

Before addressing any issues, we feel that enunciation of some general principles regarding review of PSC orders is appropriate.

The PSC is vested, by statute, with broad authority to regulate public utilities and their rates. See MCL 460.6(1); MSA 22.13(6)(1); *Attorney General v Public Service Comm*, 122 Mich App 777, 786; 333 NW2d 131 (1983), lv den 418 Mich 886 (1983). Rates set by the PSC are prima facie lawful and reasonable until found otherwise. MCL 462.25; MSA 22.44; *Michigan Consolidated Gas Co v Public Service Comm*, 389 Mich 624, 636; 209 NW2d

210 (1973); *The Detroit Edison Co v Public Service Comm,* 127 Mich App 499, 507; 342 NW2d 273 (1983), lv den 419 Mich 867 (1984). On appeal, the appellant has the burden of showing by clear and satisfactory evidence that the order of the psc was unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8); *General Motors Corp v Public Service Comm No 1,* 175 Mich App 576, 580; 438 NW2d 613 (1988). The appellant must also show that the psc's findings of fact were not supported by competent, material and substantial evidence. Const 1963, art 6, § 28; *Building Owners & Managers Ass'n of Metropolitan Detroit v Public Service Comm,* 131 Mich App 504, 516; 346 NW2d 581 (1984), aff'd 424 Mich 494; 383 NW2d 72 (1986).

II

Consumers first argues that the August 4, 1987, orders were unreasonable and unlawful because the psc hearings were limited solely to the issue of the impact of the TRA on rates. Specifically, Consumers asserts that the limited issue hearings violated statutory requirements under MCL 462.22; MSA 22.41, as well as its due process rights. We disagree.

Panels of this Court have consistently upheld the validity of psc proceedings limited to a single issue or purpose. See *Colony Park Apartments v Public Service Comm,* 155 Mich App 134, 138-140; 399 NW2d 32 (1985) (rate increase sought after psc determined proper rates for master-metered multiple dwellings); *Attorney General v Public Service Comm,* 141 Mich App 505, 508; 367 NW2d 341 (1984), lv den 422 Mich 878 (1985) (rate adjustment sought to reflect charges in operating and maintenance expenses); *Attorney General v Public Service Comm No 1,* 133 Mich App 719, 727; 349

NW2d 539 (1984), lv den 422 Mich 910 (1985) (rate adjustment sought to reflect changes in operating and maintenance expenses); *Attorney General v Public Service Comm, supra,* 122 Mich App 788 (rate adjustment sought to reflect changes in operating and maintenance expenses); *Consumers Power Co v Public Service Comm,* 65 Mich App 73, 76-77; 237 NW2d 189 (1975), lv den 396 Mich 817 (1976) (rate adjustment sought to reflect elimination of federal income tax surcharge).

In light of this line of cases, we believe the PSC had authority to limit the hearings to the impact of the TRA on Consumers' rates. Therefore, Consumers' claim lacks merit.

III

Consumers next contends that the PSC arbitrarily and unreasonably ignored Consumers' financial stabilization status in promulgating rate reductions and refunds.

As previously concluded, the PSC had power to limit the hearings in this case to the effect of the TRA on Consumers' utility rates. Consequently, the impact of the TRA reductions and refunds on Consumers financial stabilization status was beyond the scope of the hearings and should not now be used as a basis for overturning the PSC's orders.

In any event, it was certainly within the PSC's broad ratemaking authority to determine which factors it would consider in ascertaining the effect of the TRA. In addition, there was expert opinion testimony supporting the PSC's rate reductions and refunds, and this testimony constituted competent evidence. See *Attorney General v Public Service Comm,* 174 Mich App 161, 170; 435 NW2d 752 (1988); *Great Lakes Steel Div of Nat'l Steel Corp v Public Service Comm,* 130 Mich App 470, 481; 344

NW2d 321 (1983), lv den 419 Mich 895 (1984). Therefore, we decline to interfere with the PSC's orders simply on the basis that it did not consider Consumers' financial stabilization status.

IV

Consumers argues that the PSC's orders requiring refunds of excess tax reserves for gas and electric services were unreasonable, arbitrary, capricious and unlawful. Consumers has failed to cite any authority for its assertion that its excess tax reserves should not be refunded. A party may not leave it to this Court to search for authority to sustain or reject its position. Statement of the position without supporting citation is insufficient to bring the issue before this Court. *Settles v Detroit City Clerk,* 169 Mich App 797, 807; 427 NW2d 188 (1988). In any event, we believe the instant case is analogous to *Michigan Bell Telephone Co v Public Service Comm,* 85 Mich App 163, 169-172; 270 NW2d 546 (1978), lv den 405 Mich 822 (1979), in which a PSC order directing Michigan Bell to refund excess state income tax reserves was upheld. As in *Michigan Bell,* the PSC in this case essentially ordered Consumers to refund money collected from its ratepayers which was in excess of what Consumers was going to pay in taxes. The money refunded in reality already belonged to the ratepayers. Therefore, the PSC's order of refunds was not unlawful, unreasonable or unsupported by competent, material and substantial evidence.

V

Finally, Consumers claims that the PSC erroneously refused to reopen the record so that adjustments in the 1986 test year calculations could be

made to reflect rate reduction refunds in electric services ordered in another case. In addition, Consumers wanted to utilize the year with the current rates as the test year for determining the affect of the TRA.

Consumers has failed to present us with clear and satisfactory evidence that the PSC's adoption of 1986 as the test year was erroneous, particularly in light of the necessity for a timely decision in this case. In addition, many of the arguments presented by Consumers in its motion to reopen the record had been previously presented during the proceedings regarding the TRA rate reductions.

Moreover, we believe selection of the test year is within the PSC's broad ratemaking power. MCL 460.6, 460.557; MSA 22.13(6), 22.157. As a reviewing Court, we must give due deference to the PSC's administrative expertise and we will not substitute our judgment for that of the PSC. *General Motors Corp v Public Service Comm No 2,* 175 Mich App 584, 589-590; 438 NW2d 616 (1988). Consequently, we refuse to substitute our judgment with respect to the adoption of 1986 as the test year. The PSC did not err in denying Consumers' motion to reopen the record.

## VI

We do not believe that Consumers has satisfied its burden of showing by clear and satisfactory evidence that the PSC's orders were unlawful or unreasonable, MCL 462.26(8); MSA 22.45(8). However, there still remain issues presented by ABATE and the Attorney General which we summarily address below.

## VII

ABATE and the Attorney General argue that the

PSC's order regarding electric rate reductions authorizing Consumers to collect $21,697,000 under bond pending completion of the Midland Nuclear Plant case was unlawful, unreasonable and unsupported by competent, material and substantial evidence. ABATE and the Attorney General contend that Consumers' rates should be immediately reduced by $21,697,000. We have reviewed the parties' arguments and find them unpersuasive.

The $21,697,000 was collected under bond pending resolution of the Midland Nuclear Plant case in which it would be decided whether Consumers could offset its taxable income with the interest on its investment in the Midland Plant. We do not believe that this action by the PSC would result in Consumers' ratepayers absorbing the cost of the Midland project. It was well within the PSC's broad ratemaking authority to determine the consequences of the Midland Plant on Consumers' taxable income for purposes of the TRA rate reductions and refunds. MCL 460.6, 460.557; MSA 22.13(6), 22.157. Furthermore, we conclude that the PSC's orders did not constitute retroactive ratemaking. *Michigan Bell Telephone Co v Public Service Comm,* 315 Mich 533, 545-555; 24 NW2d 200 (1946). Neither ABATE nor the Attorney General have demonstrated by clear and satisfactory evidence that the order was unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8).

VIII

The Attorney General asserts that the PSC erred in failing to order an additional gas rate decrease of $2,809,000.

A negative surcharge on Consumers' rates was due to expire in 1987. At this time, Consumers' rates would rise, thus resulting in a rise in its

taxable income and a rise in savings from the TRA rate reduction. The surcharge was in effect for only three months of the 1986 test year. However, the PSC directed Consumers to consider the surcharge in effect the entire year for purposes of the TRA cases.

As stated earlier, the selection of a test year and any necessary adjustments is within the PSC's broad ratemaking power and expertise, MCL 460.6(1); MSA 22.13(6)(1). Thus, we decline to substitute our judgment for that of the PSC. *General Motors Corp v Public Service Comm No 2, supra.* In addition, there was competent, material and substantial evidence in the form of expert testimony supporting the PSC's decision based on the 1986 test year with the adjustments. The Attorney General's claim lacks merit.

IX

In conclusion, we believe that none of the parties have demonstrated by clear and satisfactory evidence that the PSC's August 4, 1987, orders were unlawful, unreasonable or unsupported by competent, material and substantial evidence. Therefore, we affirm the PSC's orders in total.

Affirmed.