BYRNE v SCHNEIDER'S IRON & METAL, INC

Docket No. 122540. Submitted October 3, 1990, at Marquette. Decided July 8, 1991, at 9:20 A.M. Leave to appeal sought.

Jack D. Byrne, as personal representative of the estate of Michael R. Byrne, deceased, brought a wrongful death action in the Dickinson Circuit Court against Schneider's Iron & Metal, Inc., and East Kingsford Iron & Metal Co., asserting the theory of attractive nuisance. The eight-year-old decedent died of asphyxiation after a boulder rolled on top of him while he was playing in a sandpit located on the defendants' property. The jury awarded the plaintiff $100,000 for Michael's conscious pain and suffering and awarded his parents and sisters $500,000 each. The awards to the plaintiff and to Michael's parents were reduced to compensate for their comparative negligence. The court, Francis D. Brouillette, J., entered judgment consistent with the verdict. The defendants appealed, and the plaintiff cross appealed.

The Court of Appeals *held:*

1. The court properly denied the defendants' motion for judgment notwithstanding the verdict. The plaintiff proved all of the elements of the attractive nuisance claim.

2. The jury did not err in inferring from the evidence that the decedent had pain and suffering while conscious during the intervening time between the injury and death.

3. The court did not abuse its discretion in admitting testimony of the defendants' neighbor regarding whether they were given notice of the danger of their sandpit to neighborhood children. The evidence was relevant and its probative value outweighed its prejudicial effect.

4. The jury was properly instructed.

5. The court did not abuse its discretion in denying the plaintiff's motion for a new trial or remittitur.

6. The trial court did not err in submitting to the jury the issue of the decedent's parents' comparative negligence in

REFERENCES

Am Jur 2d, Death § 200; Negligence §§ 1235, 1496.

Parent's right to recover for loss of consortium in connection with injury to child. 54 ALR4th 112.

relation to their recovery for loss of services, society, and companionship. The parents' comparative negligence is relevant under the wrongful death statute, MCL 600.2922; MSA 27A.2922, where recovery is sought for damages sustained by the parents because of the wrongful death of the child. However, the comparative negligence of the parents may not be imputed to the recovery attributable to the child's damages.

Affirmed.

NEGLIGENCE — WRONGFUL DEATH — COMPARATIVE NEGLIGENCE — DAMAGES.

    The comparative negligence of the parents of a child is relevant under the wrongful death statute where recovery is sought for damages sustained by the parents because of the wrongful death of their child; however, the comparative negligence of the parents may not be imputed to the recovery attributable to the child's damages (MCL 600.2922; MSA 27A.2922).

*Petrucelli & Petrucelli, P.C.* (by *Vincent R. Petrucelli*), for the plaintiff.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Mark D. Willmarth* and *Susan Healy Zitterman*), for the defendants.

Before: MURPHY, P.J., and BRENNAN and MARILYN KELLY, JJ.

MARILYN KELLY, J. Defendants appeal as of right from a judgment entered for plaintiff. This is a wrongful death action which is based on the theory of attractive nuisance.

Defendants raise issues regarding the adequacy of plaintiff's proof of notice and the sufficiency of the evidence of decedent's pain and suffering. They allege error in the admission of "prejudicial" evidence and in the use of certain jury instructions. Finally, they object to the court's refusal to grant them a remittitur of the jury award. Plaintiff has filed a cross-appeal, claiming the trial court erred in submitting the issue of the parents' comparative negligence to the jury. We affirm.

I

On August 21, 1987, eight-year-old Michael Byrne died while playing in a sandpit located in defendants' junkyard. Michael and two friends had gained access to the yard through a hole in the fence. Apparently Michael was trying to dig under a large boulder located near the bottom of the sandpit. The boulder slid or rolled on top of him. He died of asphyxiation.

The jury awarded plaintiff $100,000 for Michael's conscious pain and suffering. This award was reduced by ten percent, representing his comparative negligence. Michael's parents and two sisters were each awarded $500,000. Both awards to the parents were reduced by twenty-five percent, representing the parents' comparative negligence.

II

On appeal, defendants argue that the trial court erred in denying their motion for judgment notwithstanding the verdict, because plaintiff failed to prove two elements of the attractive nuisance claim. They assert that plaintiff failed to show that defendants knew or had reason to know that children were likely to trespass in the area of the sandpit. They contend, also, that there was no proof they knew or had reason to know that the sandpit and boulder involved an unreasonable risk of death to children.

We review a trial court's denial of a motion for JNOV to determine whether there are material issues of fact upon which reasonable minds might differ. *Lester N Turner, PC v Eyde,* 182 Mich App 396, 398; 451 NW2d 644 (1990). The nonmoving party is given the benefit of every reasonable

inference that can be drawn from the evidence. If reasonable minds could differ as to whether the plaintiff has met his burden of proof, a judgment notwithstanding the verdict is inappropriate. *May v William Beaumont Hosp,* 180 Mich App 728, 765-766; 448 NW2d 497 (1989).

The plaintiff must prove five elements in an attractive nuisance claim. One is that the possessor knows or has reason to know that children are likely to trespass on the location where the condition exists. *Rand v Knapp Shoe Stores,* 178 Mich App 735, 740-741; 444 NW2d 156 (1989).

In this case, a neighbor had told someone working on the property that children were playing in the pit. Defendants offered evidence that the person was not their employee. They argue that his knowledge could not be imputed to them. However, that is insufficient; actual notice is not required. It is enough that defendants have reason to know that children are likely to trespass. Two of defendants' owners admitted that they knew children were attracted to the sandpit. Therefore, there was adequate evidence on this element.

Defendants also argue that there was insufficient proof that they knew or had reason to know of the condition. They claim inadequate proof was offered that they realized or should have realized the sandpit or boulder would involve an unreasonable risk of death or serious bodily harm to children. *Rand, supra.* They contend that plaintiff had to establish that actual notice was given them that children were playing on the sand and digging under or around the boulder.

In both of the cases cited by defendants in support of their argument, the conditions involved were not, in themselves, dangerous. Rather, it was children's use of the conditions that made them dangerous. See *Rand, supra,* and *Murday v Bales*

*Trucking, Inc,* 165 Mich App 747; 419 NW2d 451 (1988). Before a defendant can be said to have tolerated or acquiesced in the conduct of a third party unrelated to him, he must know or have reason to know of the conduct. *Murday,* 753.

In this case, however, defendants created the dangerous condition by placing the boulder in the sandpit. The testimony of one of the owners confirms that he was aware a precariously placed boulder could be dangerous. The boulder in this case was dangerous no matter what action the decedent took. The boy's activity goes only to the question of comparative negligence. Since defendants themselves caused the perilous condition to exist, proof of actual notice that children were digging around the boulder is not required. Therefore, plaintiff met the burden of proving that defendants had reason to know of a condition that involved an unreasonable risk of death or serious bodily harm to children.

III

Next, defendants contend that plaintiff failed to introduce evidence of Michael's conscious pain and suffering.

A jury may award reasonable compensation for the pain and suffering undergone by the decedent while conscious during the intervening time between the injury and death. MCL 600.2922(6); MSA 27A.2922(6). The existence of a decedent's conscious pain and suffering may be inferred from other evidence that does not explicitly establish the fact. *Riordan v Gould Engineering, Inc,* 74 Mich App 292, 294; 253 NW2d 736 (1977).

The pathologist testified that Michael died of suffocation; his breathing passages were obstructed by sand. When the supply of oxygen is cut off, a

person loses consciousness within minutes. This is followed by brain damage, then death. Michael's consciousness and resulting pain and suffering could be inferred from this evidence. Reasonable jurors could have reached different conclusions regarding whether the boy was conscious. *McAtee v Guthrie,* 182 Mich App 215, 220-221; 451 NW2d 551 (1989). We find no error.

IV

Defendants contend the court abused its discretion when it admitted the testimony of a neighbor regarding whether they were given notice of the danger of their sandpit to neighborhood children. They claim it was irrelevant and that its probative value was outweighed by its prejudicial effect.

Joan Maierle testified that she had seen children playing on defendants' property and exiting through a hole in the fence. She informed a person who was working on the fence. She thought the person was an employee of defendants. Other testimony indicated that he was an employee of an independent fence contractor.

This testimony was relevant to the issue of whether defendants had reason to know they were harboring an attractive nuisance. Moreover, its probative value outweighed its prejudicial effect. "Prejudicial" is not synonymous with "damaging." *Scalfani v Peter S Cusimano, Inc,* 130 Mich App 728, 735; 344 NW2d 347 (1983). Evidence that tends to prove an element of the opposing party's claim is damaging; this does not necessarily mean it is prejudicial or unfairly damaging. We find no abuse of discretion.

V

Next, defendants argue that jury instructions on

attractive nuisance, trespass and the standard of care did not adequately inform the jurors of the applicable law.

The determination whether a jury instruction is applicable and accurately states the law is within the discretion of the trial court. In order for the court to give an instruction, sufficient evidence must be presented by the party to warrant it. We review instructions in their entirety and do not extract them piecemeal. Reversal is not required if, on balance, the theories of the parties and the applicable law are adequately and fairly presented to the jury. *Wiegerink v Mitts & Merrill,* 182 Mich App 546, 548; 452 NW2d 872 (1990).

Defendants objected to the instructions on the duty to use ordinary care, conduct required for the safety of a child, and the duty of a possessor of land. SJI2d 10.05, 10.07, 19.07 and 19.10. They contend that an instruction on attractive nuisance alone would have been sufficient to apprise the jury of plaintiff's theory of liability. The instruction on the defendants' duty of ordinary care, they argue, offered the jury a broader theory of liability.

Attractive nuisance law is essentially negligence law. *Rosario v City of Lansing,* 403 Mich 124, 139; 268 NW2d 230 (1978). It places an affirmative duty on landowners to carry on activities involving a risk of death or serious bodily harm with reasonable care for the safety of known trespassing children. *Lyshak v Detroit,* 351 Mich 230, 249; 88 NW2d 596 (1957).

The standard of reasonable care is essentially equivalent to the ordinary care standard used in SJI2d 10.05. It does not impose broader liability, but merely states the duty and appropriate standard of care in an attractive nuisance case. Likewise SJI2d 10.07 represents a statement of existing

attractive nuisance precedent and does not contradict or broaden the attractive nuisance instruction. These instructions were not improper.

SJI2d 19.07 states that defendants had no duty to make the premises safe if, exercising ordinary care, they could not have known of the presence of the decedent or other trespassers. Defendants claim the use of the words "other trespassers" should have been limited to other children. Although it would have been preferable, it was not error requiring reversal.

Defendants also argue that the court erred in giving the instruction on a nondelegable duty and refusing to include the five elements of attractive nuisance on the jury verdict form. They have failed to explain their assertions and have not cited supporting authority. We will not search for authority to sustain a party's position. As it has not been properly presented, we decline to address this issue. *Consumers Power Co v Public Service Comm,* 181 Mich App 261, 268; 448 NW2d 806 (1989); *Settles v Detroit City Clerk,* 169 Mich App 797, 807; 427 NW2d 188 (1988).

VI

Defendants claim that the trial court abused its discretion in denying their motion for a new trial or remittitur. They contend that the award is excessive, internally inconsistent and without support in the proofs.

We review the trial court's decision on a motion for remittitur for an abuse of discretion. *Palenkas v Beaumont Hosp,* 432 Mich 527, 531; 443 NW2d 354 (1989); *Lester N Turner,* 398.

The jury awarded each family member $250,000 for past damages over twenty-three months and $250,000 for future damages. It apportioned all of

the future damages to the remaining five months of 1989. We find no inconsistency in awarding the same amount of damages for time periods that differ in length. *Granger v Fruehauf Corp,* 429 Mich 1, 9; 412 NW2d 199 (1987).

Defendants claim that the award was in error, because the jurors lumped all of the future damages into one year. They argue that the jury should have spread the award over the entire life expectancy of the family member. However, we note that defense counsel initiated juror confusion. In his closing argument, he suggested that the jurors could do whatever they wanted with the jury form in terms of damages; they could award a figure on one line and forget the other lines. Their decision, he advised, would not be reviewed by anyone.

Moreover, counsel did not object or ask the trial court to redirect the jurors to apportion future damages when they first came back with their verdict. Reversible error cannot be error to which the aggrieved party contributed by plan or negligence. *Smith v Musgrove,* 372 Mich 329, 337; 125 NW2d 869 (1964); *Harrigan v Ford Motor Co,* 159 Mich App 776, 786; 406 NW2d 917 (1987). Therefore, defendants have waived this issue.

### VII

On cross-appeal, the plaintiff argues that the trial court erred in submitting the question of the parents' comparative negligence to the jury. He claims he had no legal duty upon which comparative negligence could be based and that a parent's comparative negligence is not a defense to a survival action. Plaintiff does not dispute the sufficiency of the evidence of negligence.

In a wrongful death action, the personal repre-

sentative of the decedent may bring any action and recover any damages that the decedent could have recovered had he not died. MCL 600.2922(1); MSA 27A.2922(1). Certain enumerated relatives may recover damages for the loss of decedent's financial support, society and companionship. MCL 600.2922(3), (6); MSA 27A.2922(3), (6). In this case, the personal representative sought damages for decedent's conscious pain and suffering and for funeral expenses. The family members sought damages for the loss of decedent's services, society, and companionship.

Our Supreme Court has allowed jurors to consider the contributory negligence of a parent in an action brought by a parent for the wrongful death of a child. *Feldman v Detroit U R Co,* 162 Mich 486; 127 NW 687 (1910). The Court recognized three types of cases: (1) an action brought by the child in his own right; (2) an action brought by the parent for loss of services; and, (3) an action brought by the personal representative of the child to recover for the loss of services to the parent. In the first class of cases, the negligence of the parent cannot be imputed to the child. In the second class, the contributory negligence of the parent bars the action. In the third class, although the action is brought by the personal representative, the parent is the real beneficiary and the parent's contributory negligence is imputed to the child. *Feldman,* 489-490.

At the time the *Feldman* case was decided, the Legislature had provided for the survival of actions for negligent injuries to the person. By separate statute, it had also provided for a "death act" in which a personal representative would step into the decedent's shoes. The representative could maintain any action against the tortfeasor that the decedent would have had if he had survived.

The remedies provided by the two statutes were mutually exclusive. The choice of which act to proceed under was determined by whether the death was instantaneous. *In re Olney's Estate,* 309 Mich 65, 72-73; 14 NW2d 574 (1944).

The "survival act" allowed an action for the benefit of the decedent's estate based on the decedent's injuries. The "death act" allowed an action for the benefit of the beneficiaries named in the statute for the pecuniary loss caused by the death of the decedent. *Lincoln v Detroit & M R Co,* 179 Mich 189, 195-196; 146 NW 405 (1914). Following the *Feldman* rationale, the contributory negligence of the parent was not imputable to the child under the "survival act." Under the "death act," recovery inured to the parents for their pecuniary loss, and their contributory negligence barred recovery. *McCann v Detroit,* 234 Mich 268, 270; 207 NW 923 (1926).

In 1939, the two acts were combined into what we now call the "wrongful death act," found at 1939 PA 297, MCL 600.2922; MSA 27A.2922. All actions seeking damages for death caused by wrongful acts must now be brought under this statute. The statute maintains the distinction between damages recoverable by the decedent's estate on behalf of the decedent and those recoverable by the statutory beneficiaries.

No case since 1939 has squarely addressed the effect of the parents' contributory or comparative negligence on the parents' recovery. In a 1960 personal injury action brought on behalf of a child by his father, the Supreme Court stated that the defendant's argument concerning the parent's contributory negligence was irrelevant. Justice BLACK, in a concurring opinion, noted that the parent's contributory negligence was irrelevant to the child's cause of action. He added that it was a

complete bar to the father's own right to recover for the child's medical bills. *Nielsen v Henry H Stevens, Inc,* 359 Mich 130; 101 NW2d 284 (1960).

Later cases have blurred the distinction between the negligence of parents where a child seeks recovery for his injuries and where the parents seek damages in their own right. In 1961, a father sued for injuries sustained by his son who fell into an excavation. *Elbert v Saginaw,* 363 Mich 463; 109 NW2d 879 (1961). Defendants raised the issue of parental negligence. Without fully addressing the defendants' arguments, the majority noted, for the purposes of retrial, that it saw no facts on the record that indicated a dereliction in parental care. Justice BLACK concurred based on his opinion in *Nielsen,* concluding that injection of parental fault in the child's case was error warranting reversal.

Subsequently, a Court of Appeals panel adopted Justice BLACK's language when it held that injection of parental fault into the trial of a child's claim was reversible error. There was a separate trial on the father's claim for damages resulting from the child's injuries. *Lapasinskas v Quick,* 17 Mich App 733; 170 NW2d 318 (1969).

In a later case, a panel of this Court held that the injection of parental supervision in a suit for the wrongful death of a minor was error requiring reversal. However it appears the defendants were attempting to argue that the parental negligence was an intervening, proximate cause of the child's death. There is no indication that comparative negligence, with respect to the parent's claim for damages, was ever pled or considered. *Wymer v Holmes,* 144 Mich App 192; 375 NW2d 384 (1985), aff'd on other grounds 429 Mich 66; 412 NW2d 213 (1987).

Plaintiff relies on *Hardy v Maxheimer,* 429 Mich

422; 416 NW2d 299 (1987). He argues that this case is a survival action, and comparative negligence is not applicable. The Court in *Hardy* held that a wrongful death action, for purposes of the statutory period of limitations, is an action that survived by law. The Court did not discuss the distinction between recovery by a decedent and the statutory beneficiaries.

Plaintiff also contends that the parents, as a matter of law, had no duty to supervise Michael and that there can be no comparative negligence without a duty.

Both comparative and contributory negligence are founded upon the breach of some legal duty. *Schmitzer v Misener-Bennett Ford, Inc,* 135 Mich App 350, 355; 354 NW2d 336 (1984); *Zarzecki v Hatch,* 347 Mich 138, 141-142; 79 NW2d 605 (1956). Except for cases where the alleged negligent act involves the exercise of reasonable parental authority or parental discretion, Michigan has abandoned the doctrine of intra-family tort immunity. *Plumley v Klein,* 388 Mich 1, 8; 199 NW2d 169 (1972).

Plaintiff relies on a Court of Appeals case to argue that he had no duty to supervise Michael. *Paige v Bing Construction Co,* 61 Mich App 480; 233 NW2d 46 (1975). In *Paige,* the plaintiffs brought a wrongful death action to recover for the loss of their minor daughter. The defendant filed a third party complaint for contribution against the parents alleging negligent supervision. This Court held that negligent supervision was within the exceptions, and the cause of action did not exist.

However *Paige* involved an action for contribution. Contribution is a statutory right that exists between two or more tortfeasors liable for the same injury or wrongful death. MCL 600.2925a;

MSA 27A.2925(1). Since the child cannot sue his parent for negligent supervision, the parent cannot be jointly or severally liable with another tortfeasor. In this case defendants, not decedent's estate, allege that plaintiff had a duty to adequately supervise their child. They urge that the intra-family tort immunity for negligent supervision is not available. *American States Ins Co v Albin,* 118 Mich App 201, 207-208; 324 NW2d 574 (1982).

We conclude that the reasoning set forth in *Feldman, McCann,* and *Nielsen* is still persuasive; it remains in keeping with the objective of a fair apportionment of damages under the doctrine of comparative negligence. See *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979). The parent's comparative negligence is relevant under the wrongful death statute where recovery is sought for damages sustained by the parent because of the wrongful death of the child. However, the comparative negligence of the parent may not be imputed to the recovery attributable to the child's damages.

The trial court did not err in submitting to the jury the issue of the parents' comparative negligence in relation to their recovery for loss of services, society, and companionship.

Affirmed.