RESIDENTIAL RATEPAYER CONSORTIUM v PUBLIC SERVICE COM-
MISSION
ASSOCIATION OF BUSINESSES ADVOCATING TARIFF EQUITY v PUB-
LIC SERVICE COMM
ATTORNEY GENERAL v PUBLIC SERVICE COMMISSION

Docket Nos. 209014, 209019, 209069. Submitted November 9, 1999, at Lan-
sing. Decided December 7, 1999, at 9:00 A.M.

Consumers Energy Company filed an application in the Public Service
Commission for approval of a voluntary three-year experimental
pilot program for gas transportation. Over the objections of the
Residential Ratepayer Consortium, the Association of Businesses
Advocating Tariff Equity, and the Attorney General, the PSC, with-
out notice or hearing, issued an order approving the application.
The PSC thus allowed Consumers to expand its gas transportation
program, suspended Consumers' gas cost recovery (GCR) clause,
froze Consumers' rates at the then current level, and implemented
a revenue sharing program that provides customers with a refund if
Consumers' earnings exceed a particular level during the term of
the program. The objectors appealed.

The Court of Appeals *held*:

1. MCL 460.6h(2); MSA 22.13(6h)(2) allows, but does not require,
the PSC to incorporate a gas cost recovery clause in the rates or
rate schedule of a gas utility. In light of the discretionary language
of the statute, the PSC has authority to suspend the operation of a
GCR clause.

2. MCL 460.6a; MSA 22.13(6a) provides that changes in rates or
rate schedules may be authorized and approved by the PSC without
notice or hearing if, as in this case, the changes will not result in an
increase in cost of service.

3. The appellants' claim, that the PSC order should be reversed
because there is no reference in the statute to a "gas commodity
charge," is without merit. The PSC is not bound to apply any partic-
ular formula or use any specific method in setting rates and thus
has the discretion to use whatever terminology it deems
appropriate.

4. The requirement of MCL 460.6i; MSA 22.13(6i) for annual rec-
onciliation of a utility's revenues and its GCR clause must be con-

strued to apply only when a GCR clause is in effect. To construe the statute as applying where, as in this case, a GCR clause has been suspended would effectively render meaningless the PSC's authority to suspend a GCR clause.

Affirmed.

PUBLIC UTILITIES — PUBLIC SERVICE COMMISSION — GAS COST RECOVERY CLAUSES — SUSPENSION.

The Public Service Commission has statutory authority to suspend an existing gas cost recovery clause of a gas utility and may do so without notice or hearing if the suspension will not result in a rate increase (MCL 460.6a; 460.6h[2]; MSA 22.13[6a], 22.13[6h][2]).

*Shaltz & Royal, P.C.* (by *David L. Shaltz* and *Diane R. Royal*), for Residential Ratepayer Consortium.

*Clark Hill P.L.C.* (by *Douglas H. West* and *Stewart A. Binke*), for Association of Businesses Advocating Tariff Equity.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, and *J. Peter Lark, Donald E. Erickson*, and *Orjiakor N. Isiogu*, Assistant Attorneys General, for Attorney General.

*David A. Voges* and *Henry J. Boynton*, Assistant Attorneys General, for Public Service Commission.

*Jon R. Robinson, H. Richard Chambers*, and *Frank R. Knox*, for Consumers Energy Company.

Before: SAWYER, P.J., and HOOD and WHITBECK, JJ.

PER CURIAM. Appellants in these three cases appeal as of right from the December 19, 1997, order of the Michigan Public Service Commission in which the PSC approved Consumers Energy Company's application for a voluntary three-year experimental pilot program. We affirm.

The Expanded Gas Customer Choice (EGCC) program approved by the PSC allowed Consumers to expand its gas transportation program, suspended Consumers' gas cost recovery (GCR) clause, froze Consumers' rates at the then current level, and implemented a revenue sharing program that provides customers with a refund if Consumers' earnings exceed a particular level during the term of the program. Appellants contend that the PSC was without authority to suspend a GCR clause and that, even if it had such authority, it should not have done so without a formal hearing because the order increased rates. Appellants also contend that the order is a violation of the statutory requirement that GCR factors be reconciled annually with actual revenues. We disagree.

This Court's review of an order of the PSC is limited; pursuant to MCL 462.25; MSA 22.44, all rates, fares, charges, classification and joint rates, regulations, practices, and services of the PSC are presumed to be lawful and reasonable. *Attorney General v Public Service Comm*, 231 Mich App 76, 77; 585 NW2d 310 (1998). A party challenging an order bears the burden of demonstrating by clear and convincing evidence that the order is unlawful or unreasonable. MCL 462.26(8); MSA 22.45(8); *Attorney General, supra* at 77-78. "An order is unlawful if it is based on an erroneous interpretation or application of the law, and it is unreasonable if it is not supported by the evidence." *Id.* at 78; *Associated Truck Lines, Inc v Public Service Comm*, 377 Mich 259, 269, 279; 140 NW2d 515 (1966). A reviewing court must accord due deference to the administrative expertise of the PSC and may not substitute its judgment for that of the agency. *City of Marshall v Consumers Power Co (On Re-*

*mand)*, 206 Mich App 666, 677; 523 NW2d 483 (1994).

In *Attorney General, supra,* this Court addressed a similar situation with regard to power supply cost recovery (PSCR) factors in the electrical utility industry. The statutory schemes for cost recovery clauses in the natural gas and electrical utility industries are identical save for the fact that one refers to GCR factors and the other refers to PSCR factors. For example, MCL 460.6h(2); MSA 22.13(6h)(2) provides: "Pursuant to its authority under this act, the public service commission may incorporate a gas cost recovery clause in the rates or rate schedule of a gas utility, but is not required to do so." MCL 460.6j(2); MSA 22.13(6j)(2) states: "Pursuant to its authority under this act, the public service commission may incorporate a power supply cost recovery clause in the electric rates or rate schedule of a utility, but is not required to do so." In *Attorney General, supra,* this Court relied on this discretionary language to hold that the PSC had the authority to suspend the operation of a PSCR clause "at least where the suspension of the PSCR clause will not result in an increase in rates." 231 Mich App 79. The panel reasoned:

> To hold otherwise would require the once-adopted PSCR mechanism to continue into perpetuity; we find nothing in the language of MCL 460.6j; MSA 22.13(6j) to suggest that a PSCR clause in perpetuity is the only type of clause contemplated by the Legislature or that such clauses cannot ever be "sunset." . . . We read nothing in the law to suggest that the broad authority of the PSC, including its authority to promulgate PSCR clauses, is somehow constrained with respect to its authority to modify the latter, notwithstanding any changes in circumstances that might warrant rescission of such a clause. [231 Mich App 79-80.]

Because the statutory provisions regarding the PSC's authority with regard to GCR clauses is identical to that regarding PSCR clauses and the policy considerations as stated by this Court in *Attorney General, supra*, are the same, it must be concluded that the PSC also has the authority to suspend GCR clauses.

Moreover, it should be remembered that this matter involves a three-year experimental program. In *Great Lakes Steel Div of Nat'l Steel Corp v Public Service Comm*, 130 Mich App 470, 482-483; 344 NW2d 321 (1983), this Court recognized that experimental rates "[b]y their very nature. . . must await results on a test basis," unless the rates are arbitrary or capricious. Appellants have not contended that the EGCC program is arbitrary or capricious.

Next, appellants argue that even if the PSC had authority to suspend the GCR clause, it committed legal error in doing so without notice or hearing because the suspension resulted in an increase in rates. Had the GCR clause remained operational, they claim, rates would be lower. MCL 460.6a; MSA 22.13(6a) provides in part that changes in rates or rate schedules may be authorized and approved without notice or hearing only if the changes will not result in an increase in cost of service. Just as in the instant matter, in *Attorney General, supra*, the parties challenging the order raised arguments that "focused not on a rate increase directly resulting from suspension of the PSCR clause, but on a rate decrease an unsuspended clause might conceivably cause." 231 Mich App 80-82. The panel rejected the reasoning that the absence of a decrease is the equivalent of an increase and noted that if costs were lower in the future, procedures for seeking a rate adjustment are

provided by MCL 460.58; MSA 22.8 and MCL 460.557; MSA 22.157. 231 Mich App 82. These provisions apply to all public utilities and therefore provide a means to adjust rates if the price of gas falls. Therefore, the PSC did not act unlawfully when it issued the order without notice or hearing because the change did not result in an increase in rates. Appellants' arguments comparing the order to a grant of summary judgment are without merit because ratemaking is a legislative function, not a judicial one.

Appellants also argue that the PSC's order should be reversed because there is no reference in the statute to a "gas commodity charge." However, because the PSC is not bound to apply any particular formula or use any specific method in setting rates, it has the discretion to use whatever terminology it deems appropriate. See *Detroit Edison Co v Public Service Comm*, 221 Mich App 370, 373; 562 NW2d 224 (1997); *Consumers Power Co v Public Service Comm*, 181 Mich App 261, 269; 448 NW2d 806 (1989). Thus, this argument does not provide grounds for disturbing the PSC's decision.

Finally, appellants contend that the PSC's order is unlawful because it excuses Consumers from annually reconciling its revenues with its GCR clause as required by MCL 460.6i; MSA 22.13(6i). This issue requires us to construe the statute. The individual provisions of a statute must be read in context to produce an harmonious whole. *Weems v Chrysler Corp*, 448 Mich 679, 699-700; 533 NW2d 287 (1995). Statutes should be construed to avoid absurd or unreasonable consequences. *McAuley v General Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). As previously discussed, the PSC has the authority to suspend the

operation of a GCR clause because the statute clearly confers discretion on the PSC with regard to the inclusion of such clauses and there is no justification for concluding that such clauses, once established, can never be rescinded.

In the absence of an operational GCR clause, traditional rate-making procedures come into play in which rates are adjusted prospectively. To require annual reconciliation proceedings in which actual revenues for the preceding year are reconciled with the GCR clause would effectively render the PSC's authority to suspend the GCR clause meaningless because the clause would continue to play a central role in rate-setting procedures. Thus, in order to avoid absurd results, the requirement in MCL 460.6i; MSA 22.13(6i) that annual reconciliation proceedings be conducted must be construed as applying only when an operational GCR clause is in effect.

Affirmed.[1]

---

[1] We have been asked to look at the Supreme Court's decision in *Consumers Power Co v Public Service Comm*, 460 Mich 148; 596 NW2d 126 (1999). That case, however, is distinguishable from the case at bar. In *Consumers Power*, the Court addressed the question of the PSC's authority to require a utility to transmit electricity on its system to a customer who purchased the electricity from a third party. The Court concluded that the PSC has no such authority. The case at bar involves the PSC's rate-making authority where the utility wishes to implement such a program.