*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PATRICIA ALLEN, Personal Representative of the
ESTATE OF JASON ALLEN,

      Plaintiff-Appellee,

v

ARBOR SPRINGS WATER COMPANY, doing
business as ARBOR SPRINGS WATER
COMPANY, INC.,

      Defendant-Appellant,

and

DEREK HASSELBACH, WILLIAM M. HARP,
BREWER'S, INC., doing business as BREWER'S
TOWING COMPANY, and SHRADER TIRE &
OIL, INC.,

      Defendants.

UNPUBLISHED
May 12, 2026
9:37 AM

No. 368366
Washtenaw Circuit Court
LC No. 20-000625-NZ

Before: KOROBKIN, P.J., and RIORDAN and MARIANI, JJ.

PER CURIAM.

Jason Allen was fatally injured by a piece of metal that was propelled through the windshield of his vehicle. Plaintiff, the personal representative of his estate, initiated a negligence action against defendants, Derek Hasselbach, Arbor Springs Water Company, William Harp, Brewer's Towing Company, and Shrader Tire & Oil, Inc. Plaintiff proceeded to trial against Hasselbach and Arbor Springs.[1] The jury found that Hasselbach was not negligent, that Arbor Springs was negligent, and that Arbor Springs's negligence was a proximate cause of Allen's

---

[1] Harp, Brewer's Towing, and Shrader Tire & Oil were dismissed from the action before trial by stipulated order.

-1-

death. The jury awarded plaintiff substantial damages, including $2 million in damages for Allen's conscious pain and suffering. In this appeal, Arbor Springs contends that the trial court erred by denying its motion for summary disposition and its postverdict motions for judgment notwithstanding the verdict (JNOV) and remittitur. For the reasons stated in this opinion, we disagree and therefore affirm.

## I. BACKGROUND AND FACTS

Arbor Springs owned and operated a fleet of delivery trucks that delivered bottled water and water dispensers to customers in Michigan. Hasselbach was one of Arbor Springs's drivers and drove Truck 35 when making deliveries. Truck 35 made a knocking or thud noise two days before the tragic incident, but Hasselbach did not know the source of the sound. Hasselbach alerted his route supervisor, Rob Schram, by text and in person that the truck had an issue. To Hasselbach's knowledge, Schram did not do anything in response.

After completing his first delivery on January 23, 2019, Hasselbach heard knocking and a thud and felt a wobble in the steering wheel as he was going around a turn. He pulled over at a movie theater, walked around the truck, and saw that the front passenger-side wheel was cracked. The wheel had not yet lost any pieces. Hasselbach took photographs of the wheel, called Schram to tell him that there was an issue with the wheel, and sent the photographs to Schram. Hasselbach did not move the truck again.

Schram then called Chad Brewer at Brewer's Towing and told him that the wheel on the truck was cracked and that the truck had to be towed from the front. Brewer conveyed the information to his dispatcher, Laurie Dicken, who typed the dispatch note: "UNIT 35 MUST BE TOWED FROM THE FRONT!" Dicken entered the reason for the tow as "engine," which she acknowledged at trial was incorrect. Dicken also confirmed that, at the time, Brewer's Towing had a problem with some drivers not getting the notes section of calls.

William Harp, a tow truck driver for Brewer's Towing, received the dispatch text for Truck 35. The text did not mention an issue with the wheel and did not instruct him to tow the vehicle from the front. Harp arrived at the movie theater parking lot and performed a walk-around general inspection of the truck, but he did not see any cracks in the wheel. Harp attached the tow to Truck 35's rear wheels, leaving the front wheels on the ground. After beginning the tow, Harp received a call from Brewer's Towing advising him that Truck 35 had an issue with a front wheel and suggesting that he stop to assess it. Harp then stopped, reassessed the truck, saw that a piece of the front passenger-side wheel rim was missing and "some other cracks associated with that missing piece," and switched the tow from the rear to the front to keep the defective front tire off the roadway. Harp testified that he did not know at what point during the tow the piece of the rim detached from the wheel.

That same day, Casidy Reiser and Allen were driving home from work together. Reiser was driving Allen's truck with Allen in the passenger seat when Reiser suddenly heard a loud bang and saw the windshield cracked and Allen leaned over. Reiser pulled over and called 911. Reiser held up Allen's head while Allen gasped for air. After a nurse stopped to render assistance, Reiser found a metal object that had fallen out of the vehicle, which resembled a part of a wheel with a

round portion and a lug-nut area. First responders took Allen to the hospital, where he was pronounced dead later that evening.

Plaintiff filed this negligence action. Plaintiff and Arbor Springs each moved for summary disposition, and the trial court denied both motions. Plaintiff eventually proceeded to trial against Hasselbach and Arbor Springs, claiming that Hasselbach negligently maintained, operated, and supervised the truck; that Arbor Springs was liable under the owner's liability statute, MCL 257.401, for damages caused by Hasselbach's negligent inspection, operation, and supervision of the truck; and that Arbor Springs was vicariously liable for Hasselbach's negligent acts as well as for its other employees' negligent maintenance, operation, and supervision of the truck.

At trial, route supervisor Schram testified that he did not review the owner's manual with route drivers and that, as of the time of the accident, Arbor Springs lacked a policy requiring drivers to complete a daily checklist. Beyond forklift training, Schram did not provide any training to driver Hasselbach, including training on inspecting vehicles, and he did not know whether Hasselbach inspected vehicles before driving them. Schram acknowledged that he was not a trained mechanic and had never read the owner's manual. He read into the record portions of the manual advising against doing maintenance without the required know-how, proper tools, and equipment and instructing that "[t]ruck tires and wheels should be serviced by a trained person using the proper equipment." Schram indicated that he had believed that the lug nuts on Truck 35's wheels should be tightened to 325 foot-pounds, agreed that the owner's manual required 362 foot-pounds, and acknowledged that he tightened the lug nuts to the incorrect number of foot-pounds, 325, during the most recent maintenance he did on the vehicle. Schram testified that Shrader Tire & Oil installed used wheels that Arbor Springs purchased from a salvage yard. Schram also affirmed that a June 2018 Shrader Tire & Oil invoice for Truck 35 stated "wheels were cracked" and that Arbor Springs dropped off "six mounted used tire[s] and wheels"; Shrader Tire & Oil discarded two of the wheels because they were cracked and sent four for reconditioning. Schram expected and relied on Shrader Tire & Oil to inspect wheels before placing them on Arbor Springs vehicles. Schram agreed that Shrader Tire & Oil replaced the front passenger-side tire of Truck 35 in October 2018, and Shrader Tire & Oil did not indicate after the service that it found cracks in any of Truck 35's wheels. Schram also did not recall Hasselbach informing him of any problems with Truck 35 before the tragic incident.

Both sides presented a number of experts. Dr. David Eby, a senior consulting engineer, testified on plaintiff's behalf as an expert in "mechanical and metallurgy." Dr. Eby opined in relevant part that (1) the wheel was a used wheel; (2) Arbor Springs "was on notice of a pattern of cracks on the wheels of [T]ruck 35 before January 23, 2019"; (3) the wheel fractured as a result of Arbor Springs's improper maintenance; (4) "[T]ruck 35 was unsafe on the date of the accident and should not have been on the road"; (5) "Arbor Springs failed to inspect the vehicle on the date of the accident"; and (6) the piece of metal that fatally struck Allen came from Truck 35. Elaborating on his opinions, Dr. Eby testified that Truck 35 weighed approximately 19,500 pounds and that Arbor Springs purchased used wheels for the truck, despite the owner's manual advising against installing used wheels. Dr. Eby explained that Arbor Springs was on notice that wheels can crack, given testimony that two of the six used wheels that Schram took to Shrader Tire & Oil were cracked. Dr. Eby also testified that Arbor Springs used the wrong type of wrench to tighten the wheel's lug nuts and that the lug nuts were not tightened to the proper number of foot-pounds. Dr. Eby testified that the some of the larger cracks in the wheel on Truck 35 originated at the lug

-3-

nuts seats, and he explained the process by which under-tightened lug nuts can result in cracking, which occurred to the wheel from Truck 35. Dr. Eby opined that the crack in the front passenger-side wheel of Truck 35 would have been "certainly visible" on the morning of the accident. Dr. Eby also agreed that the piece of the wheel that struck Allen separated from Truck 35 while the truck was being towed from the rear.

Defense expert Dawn Demarco, an engineer who specializes in failure analysis and the testing of metal components, opined that the cracks resulted from fatigue, that there was a loss of clamp load, which "is what holds the bolted joints together," and that the cracks in the wheel "were present but not necessarily observable" when Truck 35 left Arbor Springs the date of the accident. Defense expert Richard Sherman, a vehicle and tire analysis expert, testified that photographs taken before and after the truck was towed showed the progression of the cracks in the wheel. Sherman testified that the piece would not have fallen off had Truck 35 been towed from the front, and towing Truck 35 on the damaged wheel is what resulted in a piece of the wheel falling off. He also testified that it was likely that "the cracks were present but not evident" on the morning of the accident, and that the wheel was in a hazardous condition when Truck 35 left Arbor Springs that morning. Defense expert Douglas Rowland, a mechanical engineer, opined that "Brewer's Towing created an unreasonably dangerous situation" by towing Truck 35 from the rear. An adequate inspection would have disclosed the cracked wheel and, if the truck had been properly towed with the front axle raised, the accident would not have occurred. Rowland believed it reasonable that the cracks in the wheel occurred more than 24 hours before the tow.

Medical testimony pertaining to whether Allen experienced conscious pain and suffering was offered by forensic pathologists Dr. Allecia Wilson and Dr. Brian Hunter. Dr. Wilson performed Allen's autopsy and opined that blood found in Allen's lungs and stomach indicated that he was alive and breathing at the time of injury. Dr. Wilson also testified that aspiration was typically an active process. Dr. Hunter explained that consciousness was a gradation; one was not simply fully conscious or unconscious. Dr. Hunter testified that Allen was concussed and was in a decreased, or altered, mental state. Nevertheless, Allen would have felt pain because of the severe injuries to his head. He also would have begun to experience blood loss and the alteration of his airway with blood entering it, which would have given him a sense of suffocation. Dr. Hunter observed that documentation from the first responders indicated that Allen was "gasping for air," "experiencing respiratory distress," and feeling the effects of not getting enough oxygen. First responders tried to put a tube down Allen's throat to help him breathe, but it was made difficult by Allen's gag reflex and the destabilization of his airway by blood and vomit. Dr. Hunter testified that Allen's injuries were not immediately fatal and that, to a reasonable degree of scientific certainty, Allen was able to experience pain after the accident occurred.

The jury ultimately found that Hasselbach was not negligent but that Arbor Springs and dismissed defendants Harp and/or Brewer's Towing were negligent and that their negligence was the proximate cause of Allen's death. The jurors attributed 60% of the fault to Arbor Springs and 40% of the fault to Harp and/or Brewer's Towing. The jury also found that Allen suffered conscious pain and suffering. The jury awarded plaintiff (1) $2,000,000 for Allen's pain and suffering; (2) $1,350,667 for the loss of Allen's financial support; (3) $2,500,000 for "[l]oss of service, parenting training and guidance, society and companionship, and loss of family relationships"; and (4) $6,574.40 for funeral and burial expenses.

Arbor Springs moved for JNOV or, in the alternative, for remittitur, and the trial court denied both motions. Arbor Springs now appeals.

## II. ANALYSIS

## A. SUMMARY DISPOSITION

Arbor Springs first contends that the trial court erred by denying its motion for summary disposition, arguing that it had no duty to Allen. We disagree.[2]

We review de novo a trial court's decision on a motion for summary disposition, *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020), and we "consider the pleadings, affidavits, depositions, admissions, and any other evidence in favor of the party opposing the motion, and grant the benefit of any reasonable doubt to the opposing party," *Radtke v Everett*, 442 Mich 368, 374; 501 NW2d 155 (1993). "Summary disposition is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Payne v Payne*, 338 Mich App 265, 274; 979 NW2d 706 (2021) (quotation marks and citation omitted). To the extent that resolution of the issues on appeal involves statutory interpretation, we apply de novo review. *Sherman*, 332 Mich App at 632.

"All negligence actions . . . require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v F&E Oil, Inc*, 512 Mich 95, 110; 1 NW3d 44 (2023). Arbor Springs's challenge to the trial court's denial of its motion for summary disposition concerns the first of these elements, duty. "Duty is a threshold question of law" of "whether the relationship between the actor and the injured person gives rise to any legal obligation on the actor's part for the benefit of the injured person." *Id.* at 110, 133 (quotation marks and citation omitted). A duty may be created by statute or may arise under the common law. *Downs v Saperstein Assoc Corp*, 265 Mich App 696, 699; 697 NW2d 190 (2005).

Although Arbor Springs disputes whether it owed Allen a common-law duty, plaintiff also asserts that Arbor Springs owed Allen statutory duties arising from MCL 257.683(1), 49 CFR 392.7, and 49 CFR 393.205, as adopted by MCL 480.11a(1)(b) and (3).[3] Indeed, "[t]he Legislature

---

[2] A party aggrieved by a trial court's decision on a motion for summary disposition may proceed to final judgment and raise the trial court's errors in deciding the motion in an appeal taken from the final judgment. MCR 2.116(J)(2)(c). Therefore, this issue is properly before us.

[3] Michigan's Motor Carrier Safety Act of 1963, MCL 480.11 *et seq.*, adopted various federal motor carrier safety regulations, including 49 CFR 390 through 393. See MCL 480.11a(1)(b). Michigan exempted from the application of many of the adopted regulations vehicles weighing under 26,001 pounds, but noted that such vehicles are still "subject to 49 CFR parts 391 through 393." See MCL 480.11a(3); 49 CFR 383.5 (defining "commercial motor vehicle" as including vehicles weighing 26,001 pounds or more). Because the federal regulatory scheme from which 49 CFR 391 through 393 are derived defines "commercial motor vehicle" to include vehicles weighing 10,001 pounds or more, 49 CFR 390.5, and Dr. Eby testified that Truck 35 weighed 19,500 pounds, Arbor Springs was subject to 49 CFR parts 391 through 393, MCL 480.11a(3).

can create a duty by statute, but not every statute creates such a duty." *Randall v Mich High Sch Athletic Ass'n*, 334 Mich App 697, 720; 965 NW2d 690 (2020). A statute creates a legal duty if "the purpose of the statute was to prevent the type of injury and harm actually suffered" and "the plaintiff was within the class of persons which the statute was designed to protect." *Wood v Detroit*, 323 Mich App 416, 422 n 3; 917 NW2d 709 (2018) (quotation marks and citation omitted); see also *Randall*, 334 Mich App at 720. Even when a statute imposes a legal duty, a violation of the statute is only prima facie evidence of negligence. *Randall*, 334 Mich App at 721 (quotation marks and citation omitted).

MCL 257.683(1) provides that "[a] person shall not drive or move or the owner shall not cause or knowingly permit to be driven or moved on a highway a vehicle or combination of vehicles that is in such an unsafe condition as to endanger a person . . . ." Similarly, as adopted by MCL 480.11a(1)(b) and (3), 49 CFR 392.7(a) prohibits a commercial motor vehicle from being driven unless the driver is satisfied that the listed parts and accessories, including wheels and rims, "are in good working order," and 49 CFR 393.205(a) requires that "[w]heels and rims . . . not be cracked or broken."

We have little difficulty in concluding that these statutes created duties owed to Allen. With regard to MCL 257.683(1), as this Court has noted, "it is apparent that MCL 257.683(1) was designed to prevent people," including vehicle passengers like Allen, "from harm caused by unsafe conditions on a vehicle. It is further apparent that the type of injury and harm to be prevented is injury and harm caused by unsafe conditions on the vehicle being driven." *Wood*, 323 Mich App at 422 n 3. In light of the Legislature's evident intent to prevent injury to motorists and their passengers caused by hazardous vehicular conditions like those on Truck 35, we find that MCL 257.683(1) imposed a duty. See *id.*

Further, in the trial court, Arbor Springs argued that it did not violate MCL 257.683 because Hasselbach did not drive Truck 35 after he detected a problem with the truck. However, a juror who believed Dr. Eby's opinion as stated in his deposition testimony that the cracks were visible the day before the accident could reasonably conclude that Hasselbach's conduct violated MCL 257.683(1). In addition, plaintiff presented evidence that Schram's noncompliance with the owner's manual when maintaining Truck 35's wheels may have resulted in knowingly allowing an unsafe truck on the road. Plaintiff also presented deposition testimony from a Shrader Tire & Oil representative indicating that Schram supplied Shrader Tire & Oil with used wheels to install on Truck 35, notwithstanding the owner's manual's recommendation against used wheels. Plaintiff also highlighted Schram's deposition testimony indicating that he did not tighten Truck 35's lug nuts to the proper number of foot-pounds, as well as the conclusions of expert Dr. Eby that Truck 35's right front wheel fractured because of improper maintenance. This evidence submitted by plaintiff in opposition to summary disposition created genuine issues of material fact regarding the violation of MCL 257.683(1), so whether Hasselbach's conduct violated statutory duties owed under MCL 257.683(1) was for the jury to decide. See *Kandil-Elsayed*, 512 Mich at 112; see also *Wood*, at 418, 422 n 3 (stating that, when a pedestrian was struck by a tire that came off of the defendant's van, "it appear[ed] that the possible violation of [MCL 257.683(1)] constitute[d] prima facie evidence of negligence").

MCL 480.11a, by adopting 49 CFR 392.7(a) and 49 CFR 393.205(a), also imposes statutory duties. 49 CFR 392.7(a) was evidently intended to prevent those on the road from being

harmed as a result of unsound parts and accessories, including specifically wheels and rims like that which fatally injured Allen here. See *Wood*, 323 Mich App at 422 n 3; *Randall*, 334 Mich App at 720-721. See also *Sturgis v R+L Carriers, Inc*, unpublished opinion of the United States District Court for the Northern District of Indiana, issued November 14, 2019 (Case No. 3:19-CV-440 DRL-MGG); 2019 WL 13084410, at *3 (citing 49 CFR 392.7(a) in noting that the Federal Motor Carrier Safety Regulations "explicitly describe[] duties for motor carriers and drivers"). And the purpose of 49 CFR 393.205(a) was also clearly to avert injuries to other motorists and their passengers resulting from cracked or broken wheels and rims. See *Wood*, 323 Mich App at 422 n 3; *Randall*, 334 Mich App at 720-721. See also *Surry v Spears*, unpublished opinion of the United States District Court for the Northern District of Georgia, issued September 25, 2012 (Case No. 1:10-CV-333-ODE); 2012 WL 12931981, at *12 (citing 49 CFR 393.205 in support of the proposition that the defendants had a duty "to maintain their tractor-tankers in a safe condition").

And moreover, plaintiff presented evidence from which a juror could reasonably conclude that these statutes were breached. See *Kandil-Elsayed*, 512 Mich at 112. More specifically, a reasonable juror could have concluded that Hasselbach violated 49 CFR 392.7(a) when he left on his route without inspecting Truck 35 and satisfying himself that the wheels and rims of the truck were in good working order. See, e.g., *JHOC v Volvo Trucks North America, Inc*, 303 F Appx 828, 830 n 1 (CA 11, 2008) (stating that pretrip inspections are required by 49 CFR 392.7). Plaintiff also submitted Hasselbach's deposition transcript, in which he testified that he did not inspect the truck before beginning his deliveries on January 23, 2019, and that Arbor Springs did not train or require their drivers to perform preroute inspections of their trucks. Plaintiff also presented Dr. Eby's deposition testimony that the cracks on Truck 35's wheel would have been visible the day before the incident. From this, a reasonable juror could have concluded that 49 CFR 393.205 was violated because the cracks in the wheels would have been present.

Given the duties imposed upon Hasselbach and Arbor Springs by MCL 257.683(1), 49 CFR 392.7, and 49 CFR 393.205 and in light of the genuine issues of material fact that remained regarding whether Hasselbach and Arbor Springs breached those duties, we conclude that the trial court did not err by denying Arbor Springs's motion for summary disposition and allowing the matter to proceed to trial. See *Payne*, 338 Mich App at 274.

## B. JUDGMENT NOTWITHSTANDING THE VERDICT

Next, Arbor Springs contends that the trial court erred by denying its postverdict motion for JNOV. We are unpersuaded.

We review de novo a trial court's decision on a motion for JNOV, considering "the evidence and all legitimate inferences in the light most favorable to the nonmoving party. Only when the evidence viewed in this light fails to establish a claim as a matter of law is the moving party entitled to" JNOV. *Craig ex rel Craig v Oakwood Hosp*, 471 Mich 67, 77-78; 684 NW2d 296 (2004) (quotation marks and citation omitted). "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different conclusions about whether the nonmoving party established his or her claim, then the question is for the jury." *Nashal v Fremont Ins Co*, 324 Mich App 696, 719; 922 NW2d 662 (2018) (quotation marks and citation omitted).

As discussed, plaintiff claimed that Hasselbach negligently maintained, operated, and supervised the truck; that Arbor Springs was liable under the owner's liability statute, MCL 257.401, for damages caused by Hasselbach's negligent inspection, operation, and supervision of the truck; and that Arbor Springs was vicariously liable for Hasselbach's negligent acts as well as for its other employees' negligent maintenance, operation, and supervision of the truck. Because the jury found that Hasselbach was not negligent, we are left to conclude that the jury found Arbor Springs vicariously liable for its other employees' negligent acts.[4] We accordingly note here that because plaintiff pleaded in her amended complaint that Arbor Springs was vicariously liable for negligent acts committed by its employees, including but not limited to Hasselbach, and the trial court provided a corresponding jury instruction,[5] we are unpersuaded by Arbor Springs's contention that it was entitled to JNOV as a matter of law after the jury found that Hasselbach was not negligent. Pursuant to the provided jury instructions, the jury could find Arbor Springs vicariously liable on the basis of negligent acts committed by an employee other than Hasselbach if the negligence proximately caused Allen's fatal injuries. See *Al-Shimmari v Detroit Med Ctr*, 477 Mich 280, 294-295; 731 NW2d 29 (2007) ("Nothing in the nature of vicarious liability . . . requires that a judgment be rendered against the negligent agent. Rather, . . . a plaintiff need only prove that an agent has acted negligently.").

To prove that Arbor Springs was vicariously liable under a theory of respondeat superior, plaintiff had to establish that Allen's injury resulted from the negligence of an employee acting within the scope of his or her employment. See *Hamed v Wayne Co*, 490 Mich 1, 10-11; 803 NW2d 237 (2011). And to prevail on a negligence claim, plaintiff had to establish that Arbor Springs owed Allen a legal duty, that Arbor Springs breached that duty, that Allen suffered harm, and that Arbor Springs's breach caused that harm. See *Kandil-Elsayed*, 512 Mich at 110; *Randall*, 334 Mich App at 719. Arbor Springs protests that three of those elements were not satisfied: duty, breach, and causation.

As to duty, as discussed regarding summary disposition, MCL 257.683(1), 49 CFR 392.7(a), and 49 CFR 393.205(a) imposed statutory duties upon Arbor Springs.[6] Our

_____

[4] Arbor Springs is correct that plaintiff's claim under MCL 257.401 fails as a matter of law because the jury found that Hasselbach was not negligent. Given that liability under MCL 257.401 is premised on "an injury caused by the negligent operation of [a] motor vehicle," this Court has explained that MCL 257.401 "requires a negligent act," *Reese v James*, 348 Mich App 454, 461-462; 19 NW3d 386 (2023). As plaintiff's claim under MCL 257.401 was premised entirely on Hasselbach's alleged negligence, and the jury found Hasselbach not negligent, Arbor Springs was not found liable under MCL 257.401. See *id.* at 462.

[5] The jury was instructed that plaintiff had to prove that it was more likely than not that "Defendant Arbor Springs or its employees including Defendant Derek Hasselbach were negligent in one or more ways claimed by the Plaintiff[, and] that the negligence of Defendant Arbor Springs and its employees including Defendant Derek Hasselbach was a proximate cause of . . . Allen's death."

[6] Aside from stating in a footnote that these statutes "are not applicable to its water truck," Arbor Springs does not address plaintiff's assertion that Arbor Springs owed Allen a duty under those statutes. Arbor Springs does argue, however, that the jury was likely confused by the court's

-8-

analysis of whether these duties were breached is somewhat more complicated. 49 CFR 392.7(a) premises any violation thereof on the actions of the driver. See 49 CFR 392.7(a) (stating that a "commercial motor vehicle shall not be driven unless *the driver* is satisfied that the following parts and accessories are in good working order" (emphasis added)). Because the driver in this case, Hasselbach, was found by the jury to be not negligent, Hasselbach allegedly driving the vehicle without being satisfied that the wheels were in good working order cannot be a basis for imposing vicarious liability on Arbor Springs under 49 CFR 392.7(a). See *Al-Shimmari*, 477 Mich at 294 (noting that "[v]icarious liability . . . rests on the imputation of the negligence of an agent to a principal"). In other words, the jury's finding that Hasselbach was not negligent forecloses the possibility that Arbor Springs breached its duty under 49 CFR 392.7(a).

MCL 257.683(1) and 49 CFR 393.205(a), however, are not so narrow. MCL 257.683(1) requires "[a] person" and the owner of a vehicle to "not cause or knowingly permit to be driven or moved on a highway a vehicle or combination of vehicles that is in such an unsafe condition as to endanger a person." And 49 CFR 393.205(a) generally mandates that "[w]heels and rims shall not be cracked or broken." Thus, as to Arbor Springs's responsibilities excluding Hasselbach's actions, Arbor Springs had a duty to other motorists and their passengers under MCL 257.683(1) to "not cause or knowingly permit to be driven or moved on a highway a vehicle or combination of vehicles that is in such an unsafe condition as to endanger a person" and a duty under 49 CFR 393.205(a) to maintain its trucks in such a manner that they were not operating with broken or cracked wheels and rims.

Sufficient evidence supported the jury's finding that Arbor Springs breached these duties. Per the opinions of experts Demarco, Sherman, and Rowland, the cracks in Truck 35's wheel likely would have been present on the morning of the accident, and Dr. Eby opined that the cracks also would have been visible. Sherman testified that the wheel was in a hazardous condition when Truck 35 left Arbor Springs on the morning of the incident. The jury also heard ample evidence that the condition of the wheels was attributable to the negligence of an Arbor Springs employee

---

instruction that if the jury found that the defendant(s) "violated any of these statutes[,]" the jury could "infer that the Defendants were negligent." Arbor Springs contends that the instruction was erroneous, and that the jury likely thought that by "negligent," the court meant "negligence per se." But when the trial court asked if defense counsel requested "any additions, deletions, or subtractions," counsel answered, "Nothing on behalf of the defense, your Honor." By assenting to the trial court's instructions, Arbor Springs waived any claim regarding erroneous instructions. See *Moore v Detroit Entertainment, LLC*, 279 Mich App 195, 224; 755 NW2d 686 (2008). Moreover, the instruction was not erroneous, as the trial court read verbatim the model instruction pertaining to the inference jurors may draw if they find that a party has violated a statutory duty, M Civ JI 12.01, and this instruction accords with this Court's caselaw. "Michigan law provides that when a statute imposes a legal duty, violation of that statute creates 'a rebuttable presumption of negligence,' or stated another way, the violation 'is only prima facie evidence of negligence.' " *Randall*, 334 Mich App at 721 (citations omitted). "It remains a question of fact, for example, whether the violation had a causal connection to the claimed injury." *Id.* Thus, the jury was indeed permitted to infer that Arbor Springs and Hasselbach were negligent if it found that they violated any of the three statutes.

other than Hasselbach. The jury heard evidence that Schram, Arbor Springs's de facto maintenance decision-maker, was not a trained or certified mechanic, and Dr. Eby and Sherman emphasized that Schram's use of improper tools and noncompliance with manufacturer's recommendations, along with his delegation of wheel inspection to Shrader Tire & Oil without any follow-up, were key deficiencies that contributed to the fatal incident. And Schram did not inspect Truck 35 on the morning of the incident. This evidence, if believed, provided a sufficient basis for the jury to find that Truck 35's front passenger-side wheel was cracked when Hasselbach began his route on the morning of the incident, that Schram negligently maintained the wheels of Truck 35, causing the vehicle to be driven or moved in an unsafe condition, and that any harm resulting from this negligence should be attributed to Arbor Springs. A reasonable juror therefore could have found that Arbor Springs breached its duties under MCL 257.683(1) and 49 CFR 393.205(a). See *Craig*, 471 Mich at 77-78; *Nashal*, 324 Mich App at 719.

Regarding causation, plaintiff was required to establish both cause in fact and proximate cause. *Auto Owners Ins Co v Seils*, 310 Mich App 132, 157; 871 NW2d 530 (2015). Arbor Springs protests that plaintiff established neither. As to factual cause, "[c]ause in fact requires that the harmful result would not have come about but for the defendant's conduct." *Id*. (cleaned up). Arbor Springs argues that there is no logical sequence of cause and effect between its actions and Allen's injury, and that Arbor Springs employees had nothing to do with Truck 35 once Schram called Brewer's Towing requesting that the truck be towed. We conclude, to the contrary, that there was sufficient evidence supporting factual cause. Schram acknowledged that he did not tighten Truck 35's lug nuts to the recommended number of foot-pounds, and Dr. Eby explained the role under-tightened lug nuts had in the process that leads to cracking. Further, despite the owner's manual specific warning against utilizing used wheels, Truck 35 was outfitted with used wheels like the cracked wheel at issue here. And expert evidence established that, but for the use of improperly inspected used wheels, the lack of proper maintenance protocols, the practice of tightening to the wrong specification with the wrong tool, and the absence of effective oversight, the wheel would not have failed. Absent these failures, the fatigue cracks would not have developed to the point of catastrophic breakup, and the piece would not have separated from the wheel. Lastly, it was undisputed that the piece of metal that killed Allen came from Arbor Springs's Truck 35. The jury could have reasonably inferred that Schram's negligent wheel procurement, inspection, and maintenance directly created the conditions that resulted in the wheel failure and, ultimately, Allen's fatal injuries. From this evidence, the jury could have reasonably inferred that the harmful result would not have come about but for Arbor Springs employee Schram's negligence. See *Craig*, 471 Mich at 77-78; *Nashal*, 324 Mich App at 719.

As to proximate cause, negligence is the proximate cause of an injury when the injury is "the natural and probable consequence of a negligent act or omission, which under the circumstances, an ordinary prudent person ought reasonably to have foreseen might probably occur as a result of his negligent act." *Dawe v Bar-Levav & Assoc (On Remand)*, 289 Mich App 380, 393-394; 808 NW2d 240 (2010) (quotation marks and citation omitted). Whether proximate cause is established "requires examining the foreseeability of the consequences and whether the defendant should be held legally responsible for those consequences." *Auto Owners Ins Co*, 310 Mich App at 157. "When judging the foreseeability of the risk of harm, it is not necessary that the manner in which a person might suffer injury should be foreseen or anticipated in specific detail." *Patrick v Turkelson*, 322 Mich App 595, 618; 913 NW2d 369 (2018).

Arbor Springs argues that proximate cause was insufficiently established primarily because Brewer's Towing's improper towing of the truck was a superseding cause of Allen's injury, relieving Arbor Springs of any potential liability. Arbor Springs argues that, given Schram's clear instructions to tow the truck from the front, it was not reasonably foreseeable that this message would not be delivered to the tow truck driver in the dispatch notification, that the problem with the truck would be coded as "engine," and that the truck would initially be towed from the rear. Indeed, "the chain of causation between the defendant's conduct and the plaintiff's injuries may be broken by an intervening or a superseding cause." *Auto Owners Ins Co*, 310 Mich App at 157. An intervening cause "actively operates in producing harm to another after the actor's negligent act or omission has been committed" and "relieves the original actor of liability, unless it is found that the intervening act was reasonably foreseeable." *Id.* at 157-158 (quotation marks and citation omitted).

We are thus tasked with determining whether a reasonable jury could have concluded that Brewer's Towing's improper tow was reasonably foreseeable such that the chain of causation between Arbor Springs's conduct and Allen's injury was not broken. See *id.*; *Dawe*, 289 Mich App at 395 (affirming the denial of the defendants' motion for JNOV when "[a] reasonable jury could have concluded that defendants proximately caused [the plaintiff's] injury"). This Court has deemed ordinary negligence to be reasonably foreseeable, but gross negligence or intentional misconduct not so. *People v Schaefer*, 473 Mich 418, 437-439; 703 NW2d 774 (2005). "Gross negligence is generally defined as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." *Swanson v Bittersweet Ski Resort, Inc (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2026) (Docket No. 366258); slip op at 4 (quotation marks and citation omitted). Although Dicken miscoded the problem with the truck as "engine," she testified that she used capital letters to enter into the dispatch software the information about towing the truck from the front, and she believed that the tow truck driver would receive that information. Her errors do not show "a substantial lack of concern for whether an injury results." *Id.* Similarly, Harp testified that he "walk[ed] around the vehicle and look[ed] for general defects in the vehicle as a whole" and did not see the cracked wheel, an oversight that at most amounts to ordinary, not gross, negligence—particularly in light of the fact that he was misinformed that the problem with the truck was the engine. Indeed, because Harp was unaware of any reason to tow the vehicle from the front, it was reasonable, not grossly negligent, that Harp would tow the truck from the rear. Lastly, Harp pulling over after receiving word that something was wrong with the wheel, reassessing the vehicle, and then repositioning the vehicle and towing it from the front likewise weighs against any finding that Harp acted so "reckless[ly] as to demonstrate a substantial lack of concern for whether an injury results." *Id.* A reasonable jury could therefore find that Brewer's Towing's conduct, even if negligent, was not grossly negligent, and therefore did not break the chain of proximate causation between Arbor Springs and Allen's death.

In sum, we conclude that, viewing the evidence and all legitimate inferences in the light most favorable to plaintiff, the evidence does not fail to establish a claim as a matter of law. See *Craig*, 471 Mich at 77-78; *Nashal*, 324 Mich App at 719. Arbor Springs owed plaintiff, at a minimum, duties arising under applicable statutes, and sufficient evidence supported the jury's finding that an Arbor Springs employee other than Hasselbach breached those duties, rendering Arbor Springs vicariously liable, and that the negligence was a factual and proximate cause of Allen's injury and death.

## C.  REMITTITUR

Arbor Springs alternatively contends that the trial court erred by denying Arbor Springs's motion for remittitur.  We disagree.

We review for an abuse of discretion a trial court's decision on a motion for remittitur. *Taylor v Kent Radiology*, 286 Mich App 490, 522; 780 NW2d 900 (2009).  A trial court abuses its discretion when its decision "results in an outcome falling outside the range of principled outcomes."  *Barnett v Hidalgo*, 478 Mich 151, 158; 732 NW2d 472 (2007).  "When deciding whether to grant a motion for remittitur, the trial court must examine all the evidence in the light most favorable to the nonmoving party to determine whether the evidence supported the jury's award."  *Taylor*, 286 Mich App at 522.

Arbor Springs argues that it was entitled to remittitur because the evidence shows that Allen was unconscious from the moment of injury.  A jury may award "reasonable compensation for the pain and suffering, while conscious, undergone by the deceased during the period intervening between the time of the injury and death."  MCL 600.2922(6).  "The existence of a decedent's conscious pain and suffering may be inferred from other evidence that does not explicitly establish the fact."  *Byrne v Schneider's Iron & Metal, Inc*, 190 Mich App 176, 180; 475 NW2d 854 (1991).

We conclude that Allen's consciousness and resulting pain and suffering could be inferred from the evidence presented to the jury.  To recount some of the relevant testimony, Reiser described Allen immediately after the accident as "struggling for air, gasping," and "[w]heezing from the chest."  Reiser testified that Allen did not speak or gesture and opined that he was "unconscious."  But Dr. Hunter explained that "[c]onsciousness is a gradation" and opined that Allen felt "pain as a result of very severe injuries to the head" and experienced a sense of suffocation as blood filled his airway and lungs.  Dr. Hunter noted first-responder records documenting Allen as "gasping for air" and in respiratory distress, with a preserved gag reflex and destabilized airway that complicated intubation attempts.  Dr. Hunter stated that these findings demonstrated that Allen's brainstem and neurologic functions were preserved sufficiently to allow for pain perception and suffering in the minutes following the accident.  He clarified that Allen survived for roughly 53 minutes after the accident, that Allen was given a pain-management medication, and concluded with scientific certainty that Allen was capable of experiencing pain and suffering after the accident occurred.  Further, Dr. Wilson opined that blood found in Allen's lungs and stomach at autopsy indicated that Allen was alive and breathing at the time of the injury and that aspiration is typically an active process.

This Court has before affirmed awards of compensation for pain and suffering when there was evidence that the victim struggled with aspiration after being injured and before death, allowing an inference of consciousness.  See *id.* at 180-181 (concluding that a decedent's consciousness could be inferred from testimony that the decedent's breathing passages were obstructed by sand and that "[w]hen the supply of oxygen is cut off, a person loses consciousness within minutes" which "is followed by brain damage, then death"); see also *Rickwalt v Richfield Lakes Corp*, 246 Mich App 450, 461; 633 NW2d 418 (2001) (explaining that a jury could infer that a decedent endured pain and suffering from lifeguards' testimony that the decedent expelled water when they retrieved him from the water, "suggest[ing] that the decedent consciously

aspirated some water"). Reiser's description of Allen's reaction immediately after being hit by the metal piece, Dr. Hunter's testimony about Allen's respiratory distress and evidence indicating that he could feel pain, and Dr. Wilson's testimony that aspiration was typically an active process constituted such evidence here. And although Arbor Springs highlights evidence that Allen was unconscious from the moment of injury, a trial court does not abuse its discretion by letting stand a jury's award of damages for conscious pain and suffering when reasonable jurors could have reached different conclusions regarding whether a decedent was conscious between the time of injury and the time of death. See *Byrne*, 190 Mich App at 181. From the evidence presented here, "the jury could have inferred reasonably that the decedent suffered conscious pain and suffering." *Klinke v Mitsubishi Motors Corp*, 219 Mich App 500, 515; 556 NW2d 528 (1996). We therefore find no abuse of discretion in the trial court's denial of Arbor Springs's motion for remittitur.

### III. CONCLUSION

The trial court did not err in denying Arbor Springs's motion for summary disposition, did not err in denying Arbor Springs's motion for JNOV, and did not abuse its discretion in denying Arbor Springs's alternative motion for remittitur. The judgment of the trial court is therefore affirmed.

/s/ Daniel S. Korobkin
/s/ Michael J. Riordan
/s/ Philip P. Mariani

-13-